## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LUXOTTICA GROUP S.p.A.<br>and OAKLEY, INC., | ) | Case No. 16-cv-06850 |
| | ) | |
| Plaintiffs, | ) | **Judge Sara L. Ellis** |
| | ) | |
| v. | ) | **Magistrate Judge Jeffrey T. Gilbert** |
| | ) | |
| LI CHEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND A STATUTORY DAMAGES AWARD AS TO THE DEFENDANT IDENTIFIED BY AND OPERATING AT LEAST THE INTERNET STORES CLIO4U, EXRELL, GAGAOUTLETEB, AND ONLYSERVICENQUALITY

## **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................ 2

    A.  The OAKLEY Trademarks ..................................................................................... 4

    B.  Defendant's Unlawful Activities ............................................................................ 4

    C.  Procedural History ................................................................................................. 6

II.  ARGUMENT ................................................................................................................. 6

    A.  Summary Judgment Standard ................................................................................. 6

    B.  Plaintiffs Are Entitled to Summary Judgment Against Defendant on Their Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims .................................................................................................... 6

        i.  The OAKLEY Trademarks Are Federally Registered and Incontestable .. 8

        ii.  Defendant Advertised and/or Offered to Sell Counterfeit Oakley Products in Commerce without Oakley's Authorization ........................................... 8

        iii.  Defendant's Use of the Counterfeit OAKLEY Trademarks Causes a Likelihood of Confusion and Infringes as a Matter of Law ....................... 9

III.  PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES ................................... 11

    A.  Statutory Damages Are Appropriate in this Case .................................................. 12

    B.  Defendant's Wide Exposure over the Internet Merits a Substantial Statutory Damages Award .................................................................................................. 15

    C.  The Value of the OAKLEY Trademarks Justifies a High Statutory Damages Award ................................................................................................................. 16

    D.  The Requested Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Counterfeit Sellers ....................................................................... 17

IV.  PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF ............... 18

V.  PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES AND COSTS ..................... 18

VI.  CONCLUSION ............................................................................................................. 19

# **TABLE OF AUTHORITIES**

*Cases*

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................ 6

*AutoZone, Inc. v. Strick*,
  543 F.3d 923 (7th Cir. 2008) ........................................................ 10

*Burberry Ltd. v. Designers Imps., Inc.*,
  No. 07-cv-3997, 2010 U.S. Dist. LEXIS 3605 (S.D.N.Y. Jan. 19, 2010) ....................... 16

*CAE, Inc. v. Clean Air Eng'g Inc.*,
  267 F.3d 660 (7th Cir. 2001) ..................................................... 9, 11

*Chi-Boy Music v. Charlie Club*,
  930 F.2d 1224 (7th Cir. 1991) ..................................................... 14

*Door Sys. v. Pro-Line Door Sys.*,
  83 F.3d 169 (7th Cir. 1996) ........................................................ 9

*Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*,
  No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626 (N.D. Ill. Oct. 27, 2005) ...................... 15

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*,
  No. 03-cv-4986, 2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004) ...................... 12

*Louis Vuitton Malletier, et al. v. Veit*,
  211 F. Supp. 2d 567 (E.D. Pa. 2002) .............................................. 16

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  No. 07-cv-2620, 2009 U.S. Dist. LEXIS 100851 (D.N.J. Oct. 28, 2009) ...................... 16

*Louis Vuitton S.A. v. Pun Yang Lee*,
  875 F.2d 584 (7th Cir. 1989) ...................................................... 13

*Microsoft Corp. v. Rechanik*,
  249 F. App'x 476 (7th Cir. 2007) ................................................. 10

*Monster Energy Company v. Chen Wensheng, et al.*,
  No. 15-cv-4166 (N.D. Ill. June 30, 2016) (unpublished) ............................... 1

*Monster Energy Company v. Meng Chun Jing, et al.*,
  2015 U.S. Dist. LEXIS 86956 (N.D. Ill. July 6, 2015) ............................... 1, 12

*Monster Energy Company v. Xianda Lin, et al.*,
  No. 1:16-cv-00622 (N.D. Ill. Mar. 14, 2016) (unpublished) ........................... 18

iii

*Neopost Industrie B.V. v. PFE Int'l Inc.*,
    403 F. Supp. 2d 669 (N.D. Ill. 2005) ................................................................ 7

*Packaging Supplies, Inc. v. Harley-Davidson, Inc.*,
    2011 WL 1811446 (N.D. Ill. May 12, 2011) .................................................. 7

*Packman v. Chi. Tribune Co.*,
    267 F.3d 628 (7th Cir. 2001) ............................................................................ 6

*Phillip Morris USA Inc. v. Marlboro Express*,
    No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26, 2005) .................... 18

*River Light V, L.P., et al. v. Zhangyali, et al.*,
    2016 U.S. Dist. LEXIS 111301 (N.D. Ill. Aug. 22, 2016) ................................ 1

*Rolex Watch U.S.A., Inc. v. Jones*,
    No. 99-cv-2359, 2002 U.S. Dist. LEXIS 6657 (S.D.N.Y. Apr. 17, 2002) ...................... 16

*Sara Lee v. Bags of New York, Inc.*,
    36 F. Supp. 2d 161 (S.D.N.Y. 1999) .............................................................. 14

*Tiffany (NJ) LLC v. Dong*, No. 11-cv-2183,
    2013 U.S. Dist. LEXIS 114986 (S.D.N.Y. Aug. 9, 2013) ................................ 15

*Tony Jones Apparel, Inc. v. Indigo USA, LLC*,
    2005 U.S. Dist. LEXIS 14649 (N.D. Ill. July 11, 2005) .................................. 19

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) .......................................................................................... 8

**Statutes**

15 U.S.C. § 1057(b) ......................................................................................... 8

15 U.S.C. § 1065 ......................................................................................... 4, 8

15 U.S.C. § 1114(1) ......................................................................................... 7

15 U.S.C. § 1115(a) ......................................................................................... 8

15 U.S.C. § 1115(b) ..................................................................................... 4, 8

15 U.S.C. § 1116(a) ....................................................................................... 18

15 U.S.C. § 1117(b) ................................................................................... 18, 19

15 U.S.C. § 1117(c) ......................................................................... 11, 12, 14, 18

15 U.S.C. § 1117(c)(1) ................................................................................................ 12

15 U.S.C. § 1117(c)(2) ....................................................................................... 2, 12, 18

15 U.S.C. § 1125(a)(1) .................................................................................................. 7

15 U.S.C. § 1127 ........................................................................................................... 9

17 U.S.C. § 504(c) ...................................................................................................... 14

Fed. R. Civ. P. 56(a) .................................................................................................... 6

## MEMORANDUM

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs Luxottica Group S.p.A. and Oakley, Inc.[1] (collectively, "Plaintiffs") submit this Motion for Summary Judgment and a Statutory Damages Award as to the Defendant identified by and operating at least the Internet stores clio4u, exrell, gagaoutleteb and onlyservicenquality ("Defendant"), which is advertising and offering for sale products, including hats, using counterfeit reproductions of Plaintiffs' federally registered, famous and well-known Oakley trademarks (the "Counterfeit Oakley Products") through its fully interactive, commercial Internet stores clio4u, exrell, gagaoutleteb and onlyservicenquality (the "Defendant Internet Stores"). In similar cases involving China-based Internet stores selling counterfeits, Courts have awarded statutory damages in the range of $100,000 to $1,000,000. *See River Light V, L.P., et al. v. Zhangyali, et al.*, 2016 U.S. Dist. LEXIS 111301, at * 13 (N.D. Ill. Aug. 22, 2016) (granting summary judgment and awarding $100,000 for willful trademark counterfeiting); *Monster Energy Company v. Chen Wensheng, et al.*, No. 15-cv-4166 (N.D. Ill. June 30, 2016) (granting summary judgment and awarding $1,000,000 for willful trademark counterfeiting); *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7 (N.D. Ill. Oct. 15, 2015) (granting summary judgment and awarding $100,000 for willful trademark counterfeiting); *Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *12 (N.D. Ill. July 6, 2015) (granting summary judgment and awarding $1,000,000 for willful trademark counterfeiting); *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) (granting summary judgment and awarding $150,000 for willful trademark counterfeiting). As such, Plaintiffs request that this Court

---

[1] Plaintiff Oakley, Inc. ("Oakley") is an indirect, wholly-owned subsidiary of Plaintiff Luxottica Group S.p.A.

award at least two hundred thousand dollars ($200,000) in statutory damages as authorized by 15 U.S.C. § 1117(c)(2) along with mandatory attorney fees and costs.

## I.    INTRODUCTION

Plaintiff Oakley, Inc. ("Oakley") is one of the world's best-known eyewear brands, and is a leader in the sport and performance category.  In the United States and around the world, the Oakley brand has come to symbolize high quality, and Oakley products are among the most recognizable eyewear, headwear, footwear, outerwear, jackets and apparel in the world.  [13] at ¶ 15.  Oakley incorporates a variety of distinctive marks in the design of its various Oakley products, including the trademarks OAKLEY, , , and , and other trademarks (collectively, the "OAKLEY Trademarks").  *Id.* at ¶ 17.  The images below show genuine Oakley hats bearing one or more of the OAKLEY Trademarks from Oakley's website at Oakley.com.  Declaration of Erin Lewis (the "Lewis Declaration") at ¶ 4.



| OAKLEY | Oakley's "O" Trademark |
|---|---|

The OAKLEY Trademarks have been used exclusively and continuously by Oakley, some since at least as early as 1975.  [13] at ¶ 18.  Oakley has extensively used and advertised the OAKLEY Trademarks, spending in excess of ten million dollars annually on brand advertising and promotions.  Lewis Declaration at ¶ 3.  For example, in 2015, Oakley launched the ONE OBSESSION campaign, which invites and inspires consumers to join Oakley's global network of

renowned athlete ambassadors in living out their passions. *Id.* at ¶ 5. This multi-channel brand campaign spans twenty-two (22) countries and includes digital, social, advertising, outdoor, retail activations, live events, and a digital experience on oakley.com/oneobsession. *Id.* Oakley's global network of athlete ambassadors (featured in the ONE OBSESSION campaign) includes skateboarder Eric Koston, surfer Gabrial Medina, cyclist Mark Cavendish, all-star baseball player Matt Kemp, Moto GP champion Marc Marquez, cricketer Virat Kohli, and badminton player Lin Dan. *Id.* Over its nearly 40-year history, Oakley has used many athletic endorsers, including two-time Masters Champion Bubba Watson, Olympian Shaun White, and Michael Jordan. *Id.* at ¶ 6. Oakley also currently sponsors NASCAR driver Clint Bowyer, Formula 1 driver Fernando Alonso, and is the official eyewear supplier to the Olympic Team USA in an agreement running through 2020. *Id.* at ¶¶ 7, 8. As part of this agreement, hundreds of athletes from more than fifteen (15) sports wore Oakley sunglasses at the 2012 London Olympic Games. *Id.* at ¶ 8. Oakley also supplied product for both the 2014 Sochi Olympic Games and the 2016 Rio de Janerio Olympic Games. *Id.*

Oakley has also been the subject of unsolicited media coverage as a result of Oakley's extensive promotional efforts in the United States and around the world. *New York Magazine's The Cut* recognized Oakley sunglasses in its collection of the "50 Most Iconic Sunglasses of All Time." *Id.* at ¶ 9. In 2010, Oakley donated sunglasses bearing the OAKLEY trademarks to the Chilean miners to protect their eyes from the light. *Id.* at ¶ 10. *CNBC* found that this garnered Oakley "$41 million in equivalent advertising time" and "[t]he fact that the famous Oakley 'O' is on the side of each of the miners glasses is an incredible branding coup." *Id.*

Plaintiffs move for summary judgment against Defendant for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of

the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (Count IV). There is no genuine issue of material fact as to whether Defendant is engaged in advertising and offering for sale Counterfeit Oakley Products on the Defendant Internet Stores. Further, Plaintiffs request that this Court include a finding that the Defendant's conduct was willful and award statutory damages in the amount of at least two hundred thousand dollars ($200,000).

### A. The OAKLEY Trademarks

Oakley holds numerous U.S. federal trademark registrations for its trademarks, including the OAKLEY Trademarks. Plaintiffs' Rule 56.1 Statement of Undisputed Facts at ¶ 1 ("Rule 56.1 Statement"). The registrations for the OAKLEY Trademarks are valid, subsisting, and in full force and effect. *Id*. Pursuant to 15 U.S.C. § 1065, the registrations for each of the OAKLEY Trademarks are incontestable. *Id*. Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the OAKLEY Trademarks are conclusive evidence of the validity of Oakley's registered trademarks and of the registration of the marks, of Oakley's ownership of the trademarks, and of Oakley's exclusive right to use the marks in commerce. *Id.*; 15 U.S.C. §§ 1115(b), 1065.

### B. Defendant's Unlawful Activities

Defendant's counterfeiting operation consists of multiple Online Marketplace Accounts, including the eBay Internet Stores clio4u, exrell, gagaoutleteb and onlyservicenquality (defined above as the "Defendant Internet Stores"), and using multiple different PayPal accounts to sell products over the Internet to the United States, including to Illinois residents. Rule 56.1 Statement at ¶ 7. Through the Defendant Internet Stores, Defendant was selling and/or offering for sale products bearing counterfeit versions of the OAKLEY Trademarks (defined above as the "Counterfeit Oakley Products"). *Id*. at ¶¶ 2-5. Specifically, Defendant offered for sale unauthorized hats using counterfeits of the OAKLEY Trademarks for $2.75 – $4.95 USD. *Id*.

4

Plaintiff examined the images of the Counterfeit Oakley Products shown on the Defendant Internet Stores and determined the products were counterfeit. *Id.* In addition, Plaintiffs' investigator purchased Counterfeit Oakley Products offered for sale on each of the Defendant Internet Stores. *Id.* The below images show the Counterfeit Oakley Products offered for sale in the Defendant Internet Store exrell, as well as photos of the received Counterfeit Oakley Products:



**Defendant Internet Store exrell**

  

**Counterfeit Oakley Products received from Defendant Internet Store exrell**

Plaintiffs have not authorized or licensed the Defendant to use the OAKLEY Trademarks on the Defendant Internet Stores. *Id.* at ¶ 6. Defendant is not an authorized retailer of genuine Oakley products, and the products offered for sale on the Defendant Internet Stores are not genuine Oakley products. *Id.*

### C.      Procedural History

Plaintiffs filed this action on June 30, 2016, alleging claims relating to federal trademark infringement and counterfeiting, and seeking statutory damages and injunctive relief against Defendant.  [1, 9].   This Court granted an injunction against Defendant on July 6, 2016, finding that Plaintiffs demonstrated, among other things, a strong likelihood of success on the merits of their trademark infringement and counterfeiting claims.[2] [40].  Defendant filed an Answer [56] to Plaintiffs' Amended Complaint on August 29, 2016.  The Court entered Default and Default Judgment [59] (awarding statutory damages of two million dollars ($2,000,000) per defendant) against defaulting defendants on September 7, 2016, with the exception of Defendant.

## II.     ARGUMENT

### A.      Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   The district court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).  A genuine dispute as to any material fact only exists if a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.      Plaintiffs Are Entitled to Summary Judgment Against Defendant on Their Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or

---

[2] The Temporary Restraining Order [40] was subsequently converted to a Preliminary Injunction [48] on July 20, 2016.

6

colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services ... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of his or her goods ... by another person." 15 U.S.C. § 1125(a)(1). Under the UDTPA, a defendant is liable for, among other things, (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; or (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another. 815 Ill. Comp. Stat. 510/2(a).

For a *prima facie* case of infringement, Plaintiffs must show that (1) the OAKLEY Trademarks are distinctive enough to be worthy of protection; (2) Defendant is not authorized to use the OAKLEY Trademarks; and (3) Defendant's use of the OAKLEY Trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Plaintiffs satisfy all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim. Plaintiffs' Section 43(a) of the Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011). Moreover, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks .... [w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a

likelihood of confusion?" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (internal citations omitted).

i.     <u>The OAKLEY Trademarks Are Federally Registered and Incontestable</u>

Regarding the first element, Oakley's OAKLEY Trademarks are registered with the United States Patent and Trademark Office on the Principal Register. Rule 56.1 Statement at ¶ 1. The issuance of federal registrations on the Principal Register constitutes *prima facie* evidence of the validity of Oakley's registered trademarks and of the registration of the marks, of Oakley's ownership of the trademarks, and of Oakley's exclusive right to use the marks in commerce. 15 U.S.C. §§ 1115(a), 1057(b).

Pursuant to 15 U.S.C. § 1065, the registrations for each of the OAKLEY Trademarks are incontestable. Rule 56.1 Statement at ¶ 1. Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the OAKLEY Trademarks are conclusive evidence of the validity of Oakley's registered trademarks and of the registration of the marks, of Oakley's ownership of the trademarks, and of Oakley's exclusive right to use the marks in commerce. 15 U.S.C. §§ 1115(b), 1065.

Therefore, there can be no genuine issue of material fact as to whether Oakley has valid and exclusive rights in the OAKLEY Trademarks.

ii.     <u>Defendant Advertised and/or Offered to Sell Counterfeit Oakley Products in Commerce without Oakley's Authorization</u>

Defendant advertised and offered for sale products using the OAKLEY Trademarks via the Defendant Internet Stores. Defendant is not an authorized retailer of genuine Oakley products, and the Counterfeit Oakley Products offered for sale on the Defendant Internet Stores are not genuine Oakley products. Rule 56.1 Statement at ¶ 5.

8

### iii. Defendant's Use of the Counterfeit OAKLEY Trademarks Causes a Likelihood of Confusion and Infringes as a Matter of Law

The side-by-side comparison below[3] shows that Defendant's unauthorized marks are spurious marks which are identical with, or substantially indistinguishable from, the registered OAKLEY Trademarks, and thus are counterfeit. 15 U.S.C. § 1127 (definition of "counterfeit").

| Registered Trademark | clio4u | exrell | gagaoutleteb | onlyservicenquality |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| OAKLEY |  |  |  |  |

In a trademark infringement case, likelihood of consumer confusion is ordinarily a question of fact. *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 677 (7th Cir. 2001) (citations omitted). However, "if the evidence is so one-sided that there can be no doubt about how the question should be answered," the question of whether likelihood of confusion exists may be resolved on summary judgment. *Id.* (citing *Door Sys. v. Pro-Line Door Sys.*, 83 F.3d 169, 173 (7th Cir. 1996)).

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479

---

[3] Full versions of these images are attached to this Motion as Exhibits 2-6 to the Declaration of Mary Fetsco. *See* Declaration of Mary Fetsco at ¶¶ 3-7.

(7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the OAKLEY Trademarks.

The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" his products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Plaintiffs have submitted documentation showing that Defendant is using the OAKLEY Trademarks to sell products not manufactured or licensed by Oakley. Rule 56.1 Statement at ¶¶ 2-6; Fetsco Declaration at ¶¶ 3-7. Both Oakley and Defendant advertise and sell their products over the Internet, targeting consumers searching for genuine Oakley products. [13] at ¶ 21; Rule 56.1 Statement at ¶¶ 2-5. Additionally, Plaintiffs have submitted documentation that Defendant used a stylized version of the OAKLEY trademark in a similar manner to how Oakley uses the OAKLEY Trademarks to sell genuine Oakley products on oakley.com. *See* Lewis Declaration at ¶ 11. Thus, consumers searching for genuine Oakley products (who are diverse with varying degrees of sophistication) are likely to have difficulty distinguishing genuine Oakley products from Defendant's products not licensed or manufactured by Oakley. This is particularly true in this case where the Defendant's products are sold on the Internet and consumers cannot inspect the physical product. In that regard, Defendant advertises and offers to sell products that copy the style of genuine Oakley products and use the OAKLEY Trademarks. Rule 56.1 Statement at ¶¶

10

2-5.  Defendant also used keywords such as "Fashion," and "New Fashion" in the product titles, suggesting similarity of its products to genuine Oakley headwear sold under the OAKLEY Trademarks.  *Id.* at ¶¶ 3, 5.  *See Chloe SAS*, 2014 U.S. Dist. LEXIS 124433, at *18 ("this conjunction of a protected name or mark alongside suggestions of superior quality, similarity, or authenticity, is more than sufficient to support a finding of counterfeiting").

Plaintiffs do not need to prove actual consumer confusion; rather they only need to show a likelihood of confusion exists, particularly given the compelling evidence that Defendant is attempting to "palm off" their goods as genuine Oakley products by using the OAKLEY Trademarks.  *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).  Thus, Defendant's use of the Oakley Trademarks in connection with the sale of unauthorized goods created a likelihood of confusion.  *See Tiffany & Co.*, 2015 U.S. Dist. LEXIS 119319, at *33 (finding likelihood of confusion where the word "Tiffany" was displayed on signs next to rings stamped with generic marks); *Chloe SAS*, 2014 U.S. Dist. LEXIS 124433, at *18-19 (finding defendant liable for use of a protected word mark in Internet sale listing).

## III.  PLAINTIFFS ARE ENTITLED TO STATUTORY DAMAGES

There is no genuine issue of material fact as to whether Defendant has infringed the OAKLEY Trademarks through its willful and intentional trademark counterfeiting.  Further, there is no genuine issue of material fact as to whether Defendant's infringement was willful, because Defendant knew it was infringing the OAKLEY Trademarks or, at a minimum, had a reckless disregard for Oakley's rights.  As such, Plaintiffs elect to recover an award of statutory damages as authorized by 15 U.S.C. § 1117(c) for trademark counterfeiting for Defendant's sale of Counterfeit Oakley Products.

The awarding of statutory damages serves dual interests in that it is remedial in nature, but also intended to protect an important public interest.  *Sands, Taylor & Wood,* 34 F.3d at 1347-48.

11

Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations. *Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03-cv-4986, 2004 U.S. Dist. LEXIS 22563, *18 (N.D. Ill. Nov. 5, 2004). Accordingly, Plaintiffs respectfully request the Court's entry of an award in the amount of at least two hundred thousand dollars ($200,000) against the Defendant for willful counterfeiting of the OAKLEY Trademarks.

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *19-20; *Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *10 (N.D. Ill. July 6, 2015). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at *20.

Oakley has expended substantial time, money, and other resources in advertising and promoting its trademarks, including the OAKLEY Trademarks. [13] at ¶ 23. In fact, Oakley has expended millions of dollars annually in advertising, promoting and marketing featuring its trademarks. *Id.* at ¶ 19. In addition, products sold under the OAKLEY Trademarks have been the

subject of extensive unsolicited publicity, including recognition in *New York Magazine's The Cut* as one of the "50 Most Iconic Sunglasses of All Time." Lewis Declaration at ¶ 9. As a result, products sold under the OAKLEY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Oakley. Thus, Defendant's use of the OAKLEY Trademarks had to be willful, because products sold under the OAKEY Trademarks are widely recognized and associated exclusively with Oakley. *See Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *10 (N.D. Ill. July 6, 2015); *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *6. Further, a search by Defendant of "OAKLEY" on Google or the United States Patent and Trademark Office website would have quickly revealed Oakley's rights in the OAKLEY Trademarks.

In addition, Defendant copied the style of genuine hats sold by Oakley under the OAKLEY Trademarks, and offered its products at prices well below the market prices for genuine Oakley hats sold under the OAKLEY Trademarks, which also indicates willful counterfeiting. Rule 56.1 Statement at ¶¶ 2-5; Lewis Declaration at ¶ 11. *See Louis Vuitton S.A. v. Pun Yang Lee*, 875 F.2d 584, 589 (7th Cir. 1989) ("manufacturers of high-fashion leather goods do not distribute them to retail outlets through itinerant peddlers, do not line the goods with purple vinyl, and do not sell them at prices which permit the retailer to make money reselling them for $ 37.80."). Defendant purposefully identified the products using the OAKLEY Trademarks where the brand manufacturer's name would commonly be located. Also, Defendant strategically described the products using keywords such as "Fashion" and "New Fashion," only included part of the stylized OAKLEY word mark in the main marketplace image, and showed none of the other OAKLEY Trademarks. These actions are indicative of steps taken to evade shut down of the Defendant Internet Stores, and further indicates Defendant's awareness of the OAKLEY brand and that it was

attempting to pass off its products as genuine headwear sold under the OAKLEY Trademarks. Rule 56.1 Statement at ¶¶ 3, 5.

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id.* In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id.* Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *16.

Further, because damages inquiries under Section 1117(c) consider both punitive and compensatory considerations, "there is no necessary mathematical relationship between the size of such an award and the extent or profitability of the defendant's wrongful activities." *Sara Lee*, 36 F. Supp. 2d at 165. Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the defendant and others situated like him is an important factor. *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*,

14

No. 03-cv-5506, 2005 U.S. Dist. LEXIS 26626, *16 (N.D. Ill. Oct. 27, 2005). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – "a counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563 at *17.

### B. Defendant's Wide Exposure over the Internet Merits a Substantial Statutory Damages Award

Defendant's ability to reach a vast customer base by willfully advertising and offering for sale Counterfeit Oakley Products over the Internet on the eBay marketplace platform merits a substantial statutory damages award. Defendant has the ability to "reach a virtually limitless number of potential customers worldwide." *Tiffany (NJ) LLC v. Dong*, No. 11-cv-2183, 2013 U.S. Dist. LEXIS 114986, *17 (S.D.N.Y. Aug. 9, 2013) (awarding a total of $9 million in statutory damages, noting defendant's vast customer base). Defendant is able to reach a large base of active buyers with the eBay platform. As of December 31, 2015, the eBay marketplace had more than 162 million active buyers. Fetsco Declaration at ¶ 2. Courts in this District have also recognized the ability for online marketplace sellers to reach a vast customer base and this effect on statutory damages. *See Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *11 (holding that AliExpress "is a busy website that provides the potential to reach a vast customer base."); *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7 ("[i]t is difficult for Bulgari to prove actual damages because the internet platform Li used, AliExpress.com, is a popular website reaching a vast customer base."). As such, a substantial statutory damages award is justified, and in similar cases involving willful Internet-based counterfeiting, courts often award high damages awards due to wide market exposure. *See Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) ($150,000 awarded for three infringed marks based on defendant's online sale of

counterfeit goods); *Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *13 (awarding statutory damages of $1 million); *Rolex Watch U.S.A., Inc. v. Jones*, No. 99-cv-2359, 2002 U.S. Dist. LEXIS 6657, at *16 (S.D.N.Y. Apr. 17, 2002) (holding that an award of $25,000 for each category of trademarked goods would be inadequate in view of the virtually limitless number of available customers on the Internet, distinguishing cases where defendants had "storefront operations," and noting that one of defendant's websites had more than 90,000 visitors); *Louis Vuitton Malletier, S.A. v. Mosseri*, No. 07-cv-2620, 2009 U.S. Dist. LEXIS 100851, *9 (D.N.J. Oct. 28, 2009) (awarding over $4 million in total statutory damages, finding that defendant's operation of its counterfeit goods enterprise on the Internet exponentially increased the damages); *Louis Vuitton Malletier, et al. v. Veit*, 211 F. Supp. 2d 567, 584-85 (E.D. Pa. 2002) (awarding $1,500,000 total and stating "the point of sale is very relevant to the statutory damages discussion" because "143 million Americans use the internet and represent the counterfeiter's potential customer base"); *Burberry Ltd. v. Designers Imps., Inc.*, No. 07-cv-3997, 2010 U.S. Dist. LEXIS 3605, *28 (S.D.N.Y. Jan. 19, 2010) (Court awarded $1,500,000 in statutory damages representing $100,000 per mark per type of goods, finding that a large award was necessary because of "defendant's ability to reach a vast customer base through internet advertising").

Thus, Plaintiffs' request for a high statutory damages award should be given favorable consideration in view of the Defendant's wide market exposure and ability to reach a vast customer base over the Internet.

### C. The Value of the OAKLEY Trademarks Justifies a High Statutory Damages Award

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Oakley] brand and the efforts taken to protect,

promote and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563 at *16. Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise, which have become enormously popular, and even iconic. [13] at ¶ 11. Oakley has expended substantial time, money, and other resources in advertising and promoting the OAKLEY Trademarks. *Id.* at ¶ 23. As thoroughly detailed throughout this Memorandum, headwear sold under the OAKLEY Trademarks has been the subject of extensive unsolicited publicity. Lewis Declaration at ¶ 9. As such, the OAKLEY Trademarks are a famous and valuable asset of Oakley.

As part of its worldwide anti-counterfeiting program, Plaintiffs investigate Internet-based infringement of the Oakley Trademarks. [13] at ¶ 27. Plaintiffs also have taken action against the owners/operators of thousands of websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. Thus, Plaintiffs' request for a high statutory damages award should be given favorable consideration in view of the value of the OAKLEY Trademarks and the extensive steps being taken to protect, promote and enhance them. *See Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *11; *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-8 (N.D. Ill. June 18, 2015); *Bulgari, S.P.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7 (N.D. Ill. Oct. 15, 2015).

### D. The Requested Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Counterfeit Sellers

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood*, 34 F.3d at 1348. For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods]

17

involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." No. 03-cv-1161, 2005 U.S. Dist. LEXIS 40359, *28 (E.D.N.Y. Aug. 26, 2005). *See also Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8; *Bulgari, S.P.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7.

Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Plaintiffs respectfully request the Court's entry of an award in the amount of at least two hundred thousand dollars ($200,000) against the Defendant. Plaintiffs' request for damages is reasonable in light of prior awards against Internet-based counterfeiters. *Monster Energy Company v. Chen Wensheng, et al.*, No. 15-cv-04166 (N.D. Ill. June 30, 2016) (Docket No. 137) ($1 million awarded for zero represented sales and two infringed marks); *Bulgari, S.p.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *7 (N.D. Ill. Oct. 15, 2015) ($100,000 awarded for three represented sales); *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-10 (N.D. Ill. June 18, 2015) ($150,000 awarded for three infringed marks).

## IV.    PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Plaintiffs respectfully request entry of a permanent injunction enjoining Defendant from advertising, offering for sale, and selling Counterfeit Oakley Products or otherwise violating their rights in the OAKLEY Trademarks. 15 U.S.C. § 1116(a); *See also Monster Energy Company v. Xianda Lin, et al.*, No. 1:16-cv-00622 (N.D. Ill. Mar. 14, 2016) (permanently enjoining and restraining defendants from selling counterfeit products).

## V.    PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES AND COSTS

Pursuant to 15 U.S.C. § 1117(b), in a case involving use of a counterfeit mark, the court shall, unless it finds extenuating circumstances, award a reasonable attorney's fee if the violation

18

consists of intentionally using a mark, knowing such mark is a counterfeit mark, in connection with the sale, offering for sale, or distribution of goods. 15 U.S.C. § 1117(b). *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *14; *Monster Energy Company v. Meng Chun Jing, et al.*, 2015 U.S. Dist. LEXIS 86956, at *13; *Bulgari, S.P.A. v. Zou Xiaohong, et al.*, 2015 U.S. Dist. LEXIS 140606, at *9-10. Thus, if a defendant is liable because it was willfully blind, or because it knew the products it was selling were counterfeit, an award of attorney's fees is mandatory under § 1117(b), absent extenuating circumstances. *Tony Jones Apparel, Inc. v. Indigo USA, LLC,* 2005 U.S. Dist. LEXIS 14649, *31-33 (N.D. Ill. July 11, 2005). Plaintiffs respectfully request entry of an award of their reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b) because Defendant knowingly and willfully advertised and offered for sale Counterfeit Oakley Products.

## VI.    CONCLUSION

Based on the above, Plaintiffs respectfully request that this Court enter an order granting summary judgment against the Defendant for willful federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV). Finally, Plaintiffs request that this Court award Plaintiffs statutory damages against Defendant of at least two hundred thousand dollars ($200,000), enter a permanent injunction prohibiting Defendant from advertising, offering for sale, and selling products using the OAKLEY Trademarks and awarding Plaintiffs their reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and (b).

Dated this 29th day of September 2016.          Respectfully submitted,

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiffs*
*Luxottica Group S.p.A. and Oakley, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September 2016, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio_____
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiffs*
*Luxottica Group S.p.A. and Oakley, Inc.*