UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC., | ) ) ) | |
| Plaintiffs, | ) ) | No. 16 C 6850 |
| v. | ) ) | Judge Sara L. Ellis |
| LI CHEN, et al., | ) ) | |
| Defendants. | ) | |

# OPINION AND ORDER

Plaintiffs Luxottica Group S.p.A. ("Luxottica") and Oakley, Inc. ("Oakley")[1] seek summary judgment and monetary and injunctive relief against the Defendant operating the internet stores clio4u, exrell, gagaoutleteb, and onlyservicenquality, through which Plaintiffs allege Defendant advertised and offered for sale hats that used counterfeit reproductions of Plaintiffs' federally registered Oakley trademarks. Plaintiffs' claims arise under the Lanham Act for trademark infringement and counterfeiting, 15 U.S.C. § 1114, and false designation of origin, 15 U.S.C. § 1125(a), and under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/1 *et seq.* The parties agree on liability, leaving the Court to decide only the proper remedies. Having considered the relevant factors and finding Defendant's infringement willful, the Court awards Plaintiffs $100,000 in statutory damages and reasonable attorneys' fees and costs. The Court also enters a permanent injunction prohibiting Defendant from violating Plaintiffs' rights in the Oakley trademarks.

---

[1] Oakley is an indirect, wholly-owned subsidiary of Luxottica. The Court collectively refers to Oakley and Luxottica as Plaintiffs.

# BACKGROUND[2]

Oakley manufactures eyewear, headwear, footwear, outerwear, jackets, and apparel. Its products are known by its distinctive marks, which have been trademarked and used exclusively and continuously by Plaintiffs since as early as 1975. Oakley holds numerous valid and incontestable federal trademarks, including under numbers 1,522,692, 1,980,039, 1,984,501, 2,293,046, 2,300,245, and 3,331,124. Defendant operates several online marketplace accounts, including the eBay internet stores clio4u, exrell, gagaoutleteb, and onlyservicenquality, and uses multiple PayPal accounts to sell hats with counterfeit Oakley trademarks, without Oakley's authorization, for between $2.75 and $4.95. These hats each displayed four of Oakley's trademarks. *See* Doc. 64 at 9. Defendant described the hats in listings as, for example, "Men Women Adjustable Golf Hip-hop Sports Summer Baseball Caps Sun Hat Unisex." Doc. 65 ¶ 2, Defendant advertised and sold these products to customers in Illinois and elsewhere in the United States.

Two of Defendant's employees, Chen Xia and Li Juan, submitted affidavits indicating that Defendant sold only eleven hats with the Oakley trademarks for a total of approximately $62. According to these employees, they bought these products from a Chinese wholesaler and could not determine from the wholesaler's website or information about the products that the hats infringed the Oakley trademarks or were otherwise counterfeit goods. They maintain that Defendant has procedures in place to avoid infringement problems, but that being "offshore Chinese resident buyers," they had "never heard of Oakley nor of the subject logo." Doc. 70-1 at 2; Doc. 70-2 at 2. As a result, they claim not to have known that the written logo on the hat was trademarked and that any infringement was unintentional.

---

[2] The facts in this section are derived from the Joint Statement of Undisputed Material Facts and the additional declarations submitted by the parties. All facts are taken in the light most favorable to Defendant, the non-movant.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I.  Liability

Plaintiffs move for summary judgment on their claims of trademark infringement and counterfeiting under 15 U.S.C. § 1114 (Count I), false designation of origin under 15 U.S.C. § 1125(a) (Count II), and violation of the UDTPA, 815 Ill. Comp. Stat. 510/1 *et seq.* (Count IV). The UDTPA violation is based on the same conduct as the federal Lanham Act claims. Defendant does not dispute liability, instead only challenging the amount of damages it owes Plaintiffs. Therefore, the Court grants summary judgment for Plaintiffs with respect to their

trademark infringement and counterfeiting, false designation of origin, and UDTPA claims and proceeds to determine the relief to which they are entitled.

## II.     Statutory Damages

Plaintiffs request that the Court award them statutory damages of at least $200,000 for Defendant's willful counterfeiting of the Oakley trademarks. Section 1117(c)(1) provides that, in place of an award of actual damages and profits, a plaintiff may elect an award of statutory damages between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c)(1). This award may be increased, up to $2,000,000, if the Court "finds that the use of the counterfeit mark was willful." *Id.* § 1117(c)(2). "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Bulgari, S.P.A. v. Zou Xiaohong*, No. 15-cv-05148, 2015 WL 6083202, at *2 (N.D. Ill. Oct. 15, 2015) (citation omitted). A defendant's knowledge can be inferred from his conduct. *Id.* In assessing the amount to award, the Court has "wide discretion" but should consider such factors as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future [trademark] infringement." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1230 (7th Cir. 1991) (quoting *F.E.L. Publ'ns v. Catholic Bishop of Chicago*, 754 F.2d 216, 219 (7th Cir. 1985)).[3] In the case of willful infringement, "the statutory damages award may be designed to penalize the infringer and to deter future violations." *Id.* at 1230 (7th Cir. 1991).

---

[3] Although *Chi-Boy Music* addressed the statutory damages scheme for copyright infringement, its analysis has been found equally applicable to determining statutory damages for trademark infringement. *See River Light V, L.P. v. Zhangyali*, No. 15 CV 5918, 2016 WL 4429758, at *3 (N.D. Ill. Aug. 22, 2016).

4

Defendant asks the Court to award minimal damages, arguing that it did not infringe intentionally and instead was unaware that the Oakley hats it sold infringed the Oakley trademarks. Defendant maintains that it follows procedures to comply with intellectual property laws, requiring purchasing employees to compare logos or words appearing in its online listings with trademark databases. It claims to have purchased the hats from a Chinese wholesaler that fooled it into thinking the hats were genuine. Defendant claims that the pictures provided by the wholesaler did not allow Defendant to recognize the Oakley trademarks. These unsupported statements, when compared to the listings for the hats, where the Oakley name is clearly recognizable in the photographs of the hats advertised for sale, are unpersuasive. The Oakley trademarks are relatively well known, with Oakley having invested significantly in ensuring widespread recognition of its brand, and could not have been so foreign or obscure to escape attention, particularly that of merchandisers allegedly trained to detect counterfeit products. As such, Defendant's employees' statements that they could not make out the stylized writing on the photographs of the hat to at least recognize that it comprised a logo and thus raised a potential trademark problem borders on the unbelievable. *See Zou Xiaohong*, 2015 WL 6083202, at *2 (finding unpersuasive defendant's unsubstantiated statements that he was not familiar with European luxury products or brand names). Defendant also points out that the descriptions of the products did not use the word Oakley to suggest its innocence, but this absence could just as easily be evidence of willful action taken to avoid detection. *See River Light*, 2016 WL 4429758, at *3 (noting that wording of product description was "consistent with the actions of an intentional infringer, who would try to maximize sales of infringing products while minimizing the risk of the infringement being discovered"); *Zou Xiaohong*, 2015 WL 6083202, at *2 (omission of BVLGARI mark in product description permitted inference of willful

infringement). At the least, the Court finds that Defendant acted with willful blindness to the counterfeit nature of the hats it advertised for sale. *See River Light*, 2016 WL 4429758, at *3 (finding that defendant's explanation that it did not recognize plaintiff's trademark suggested at the least willful blindness). Such willful blindness is enough to allow for an increased damages award. *See Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) ("Willful blindness is knowledge enough.").

Defendant also argues that Plaintiffs' requested damages award of $200,000 is excessive, particularly because Defendant only sold eleven hats with infringing Oakley trademarks for a total of approximately $62 and claims not to be a large-scale counterfeiter.[4] The actual damages Plaintiffs suffered do not ultimately matter, however, as Plaintiffs have elected to pursue statutory damages under § 1117(c). But the Court does acknowledge that Plaintiffs have not introduced evidence that Defendant operates a large-scale counterfeiting operation or that they suffered significantly from these particular instances of infringement.[5] At the same time, however, Defendant had the potential to reach a wide audience with its counterfeit goods because it advertised them on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store. *Compare Luxottica USA LLC v. The Partnerships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14 C 9061, 2015 WL 3818622, at *2–3 (N.D. Ill. June 18, 2015) (collecting awards from cases where counterfeiting took place online

---

[4] Although Defendant consistently refers to PayPal or other records that would establish actual damages or show how much Defendant actually profited from the infringing sales, Defendant does not supply these records, instead only providing identical affidavits from two employees stating the amount of sales without supporting records. Plaintiffs did submit an email from Defendant to counsel in which Defendant laid out the amounts for which each hat sold and the profit made on each transaction, but again, these numbers are not supported by any underlying documents.

[5] It does appear that Defendant operates at least one additional eBay store, whitesibirien, named as a defendant in a separate case brought by Plaintiffs in this district, *Luxottica Grp. S.p.A. v. Li Ning*, No. 16 C 7455 (N.D. Ill.). To Plaintiffs, this suggests that Defendant has concealed the extent of its business operations, an additional reason for awarding higher statutory damages.

that found "substantial damages awards appropriate," ranging between $50,000 and $750,000 per mark), *with Coach, Inc. v. Treasure Box, Inc.*, No. 3:11CV468-PBS, 2014 WL 888902, at *4 (N.D. Ind. Mar. 6, 2014) (awarding $3,000 per mark against a brick-and-mortar infringer that was no longer in operation, noting "the small scale of [its] brief operation"); *Coach, Inc. v. Becka*, No. 5:11-CV-371(MTT), 2012 WL 5398830, at *6–7 (M.D. Ga. Nov. 2, 2012) (awarding $2,000 per mark, noting that the defendant "was operating out of a single small retail location, and [she] did not sell or advertise the counterfeit items on the Internet").

The Court also takes into account Plaintiffs' significant efforts to protect and promote the Oakley brand. *See Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03 C 4986, 2004 WL 2534378, at *6 (N.D. Ill. Nov. 8, 2004) ("[T]he significant value of Lorillard's brand and the efforts taken to protect, promote, and enhance that brand should be considered by the court in the determination of the appropriate dollar figure of the award."). Plaintiffs began using the Oakley trademarks as early as 1975, have engaged in significant marketing and branding campaigns, and have sought to protect the brand by filing suits, such as this one, against counterfeiters. "The proliferation of lower-quality, counterfeit goods damages a brand's value and goodwill, and a significant award is required to deter defendant and others from engaging in similar conduct." *River Light*, 2016 WL 4429758, at *4. The Court thus finds it appropriate to impose a higher award to deter future infringement by Defendant and others because "[a] counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners." *Lorillard Tobacco Co.*, 2004 WL 2534378, at *6. In mitigation, the Court acknowledges that Defendant does not appear to be selling any additional Oakley counterfeit products and retained an attorney to defend it in this case instead of failing to appear.

Considering the factors discussed above, the Court finds it appropriate to award Plaintiffs $100,000 in statutory damages.

## III. Permanent Injunction

Plaintiffs also ask that the Court permanently enjoin Defendant from advertising and selling counterfeit Oakley products or otherwise violating their rights in the Oakley trademarks. Defendant does not address this request in its response, appearing to concede the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). The Court finds Plaintiffs' request appropriate: Defendant infringed the Oakley trademarks; the harm to the Oakley brand cannot be fully compensated by the statutory damages award, *see, e.g.*, *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) ("[D]amage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy."); the requested injunction merely prohibits Defendant from violating the law; and the public interest favors Plaintiffs because "enforcement of the trademark laws prevents consumer confusion," *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). Thus, the Court grants Plaintiffs' request for a permanent injunction.

## IV. Attorneys' Fees and Costs

Finally, Plaintiffs ask that the Court award them their attorneys' fees and costs. Plaintiffs may recover attorneys' fees under § 1117(a) and (b) for, among other things, the willful or intentional use of the counterfeit mark. 15 U.S.C. § 1117(a)–(b). These provisions apply even where the plaintiff has elected to receive statutory instead of actual damages. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012). Because the Court has found that Defendant acted willfully, the Court awards Plaintiffs their reasonable attorneys' fees.

Additionally, as the prevailing party, Plaintiffs are entitled to costs under Federal Rule of Civil Procedure 54(d)(1).

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion for summary judgment [63]. The Court enters judgment for Plaintiffs on Counts I, II, and IV. The Court enters a permanent injunction prohibiting Defendant from violating Plaintiffs' rights in the Oakley trademarks. The Court awards Plaintiffs $100,000 in statutory damages and their attorneys' fees and costs. Plaintiffs shall submit a motion for attorneys' fees and a bill of costs by April 7, 2017, with Defendant's response due by April 21, 2017.

Dated: March 2, 2017

SARA L. ELLIS
United States District Judge